UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRIS BALLOW, Plaintiff, v. U.S. DEPARTMENT OF JUSTICE, Defendant. | Civil Action No. 20-0245 (ABJ) |

## MEMORANDUM OPINION

Plaintiff Harris Ballow filed this action under the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552. The defendant has filed a Motion for Summary Judgment (ECF No. 15), and the Court will grant the motion for the reasons discussed below.

## I. BACKGROUND

### A. Plaintiff's Allegations of Fact

Plaintiff, a federal prisoner currently designated to the United States Penitentiary in Terre Haute, Indiana, explains that he "was extradited from Mexico in April 2011, pursuant to a specific 'Order of Extradition'" which "limited the offenses for which [he] could be detained, tried or punished upon his return to the United States." Compl. (ECF No. 1) ¶ 3. He alleges that the U.S. Department of Justice "conspired . . . to violate [his] rights . . . by participating in [his] post[-]extradition detention, trial, and punishment . . . for numerous offenses for which extradition was not granted by Mexico in 2011, damaging [him] in his business and property." *Id*.

In December 2019, plaintiff submitted a FOIA request to the Executive Office for United States Attorneys ("EOUSA"), a component of the U.S. Department of Justice ("DOJ" or

"defendant"). *See id.* ¶¶ 1-2. When plaintiff filed this lawsuit in January 2020, defendant had not yet responded, *see id.* ¶ 4, and plaintiff demanded defendant's "full and immediate compliance with its statutory obligations under the FOIA[] and all responsive records be provided forthwith." *Id.* at 2 (page number designated by CM/ECF).

### B. Defendant's Assertions of Fact

Defendant filed its summary judgment motion (ECF No. 15) on September 10, 2020. On September 14, 2020, the Court issued an Order (ECF No. 16) notifying plaintiff of his obligation to respond to the motion and advising him that the Court would accept as true the facts set forth in Defendant's Statement of Material Facts (ECF No. 15-1, "SMF") if he did not submit affidavits or documentary evidence to the contrary. Plaintiff has not filed an opposition or other response to defendant's motion for summary judgment, and the Court will treat defendant's asserted facts as admitted. *See* LCvR 7(h)(1). But in accordance with Circuit authority, the Court will go on to assess the motion on its merits rather than treating it as conceded.

Defendant construed plaintiff's FOIA request as one for records in the files of the United States Attorney's Office for the Southern District of Texas ("USAO-SDTX") regarding plaintiff's extradition from Mexico "and any waiver [thereof]." SMF ¶ 4; *see* Finney Decl. (ECF No. 15-3), Ex. A (ECF No. 15-3 at 5). The EOUSA acknowledged receipt of plaintiff's FOIA request by letter dated January 9, 2020. SMF ¶ 5.

A search for responsive records began with PACER and CASEVIEW. *See id.* ¶ 6. "PACER is the federal courts' electronic computer base filing system," *id.* ¶ 7, and a search yielded no records in PACER responsive to plaintiff's FOIA request. *Id.* ¶ 8.

CASEVIEW is the case filing system used by USAO-SDTX "to track[] civil and criminal cases, appellate investigations, and matters within the USAO-SDTX based on parties' names,

2

USAO case jacket numbers, and Court case docket numbers." *Id.* ¶ 7. The CASEVIEW query, using "Harris Dempsey Ballow, aka Harris Ballow" as a search term, located a criminal case file, USAO # 2008R13520, for Criminal Case No. 4:10-CR-00494 in the U.S. District Court for the Southern District of Texas. *See id.* ¶ 8. A further search of paper and electronic files at the USAO/SDTX using the criminal case number as a search term yielded ten boxes of potentially responsive records. *See id.* ¶ 9. A physical search of these paper files yielded "one email and . . . extradition documents" about plaintiff totaling 84 pages of records. *See id.* ¶¶ 9, 11.

The EOUSA referred the matter to the Justice Department's Criminal Division from which all the potentially responsive records originated. *Id.* ¶ 11. By letter dated July 9, 2020, the Criminal Division notified plaintiff of its decision to withhold in full all 84 pages of records under FOIA Exemptions 5, 6, 7(C), and 7(D). *Id.* ¶ 12; *see* O'Keefe Decl. (ECF No. 15-4), Ex. B (ECF No. 15-4 at 19-20).

## II. ANALYSIS

### A. Standard of Review

This case, like "the vast majority of FOIA cases[,] can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). "In a suit brought to compel production, an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)) (additional citation omitted). Ordinarily, where the agency moves for summary judgment, it must identify materials in the record to demonstrate the absence of any genuine issue of material fact, *see* FED. R. CIV. P. 56(c)(1), relying on declarations which "describe

the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)); *see SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (stating that agency declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents").

Plaintiff as the non-moving party must point to specific facts in the record to show that there remains a genuine issue suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "But where a plaintiff has not provided evidence that an agency acted in bad faith, 'a court may award summary judgment solely on the basis of information provided by the agency in declarations,'" *Judicial Watch, Inc. v. U.S. Dep't of Defense*, No. 14-CV-1935, 2016 WL 410993, at *1 (D.D.C. Feb. 2, 2016) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)), *aff'd*, 847 F.3d 735 (D.C. Cir. 2017), provided that the declarations are not "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (footnote omitted).

**B. Defendant's Search for Responsive Records**

The D.C. Circuit has explained that in order to obtain summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "The Court applies a reasonableness test to determine the adequacy of search methodology . . . consistent with the congressional intent tilting in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)

(citations and internal quotation marks omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). To this end, an agency may submit affidavits or declarations to explain the method and scope of its search. *See Perry*, 684 F.2d at 126. Such affidavits or declarations should "describe . . . what records were searched, by whom, and through what processes." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). This defendant demonstrates that the EOUSA conducted a reasonable search for records responsive to plaintiff's FOIA request.

Defendant referred plaintiff's FOIA request to the USAO/SDTX, the office which prosecuted the criminal case against plaintiff and the place where responsive records likely would be located. A search of USAO/SDTX recordkeeping databases using variations of plaintiff's name and criminal case number as search terms yielded ten boxes of potentially responsive records, and a physical search of these paper records yielded information pertaining to plaintiff's extradition from Mexico. Plaintiff has made no showing to the contrary.

**C. Exemptions**

The responsive records are a two-page letter which incorporates by reference an 82-page attachment. O'Keefe Decl. ¶ 9. The letter is addressed to the USAO/SDTX and was prepared by the Criminal Division's Office of International Affairs ("OIA"). *Id.* It pertains to plaintiff's extradition from Mexico in connection with a then-ongoing criminal prosecution of plaintiff. *Id.* The letter "summarizes the extradition request and the charged criminal offenses against [p]laintiff, as well as information related to expected sentencing of [p]laintiff." *Id.* Defendant withholds all the responsive records under Exemptions 5, 6, 7(C) and 7(D). *See* SMF ¶ 12.

### 1. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It applies to a document meeting "two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Defendant meets its threshold requirement, explaining that the letter and attachment were "generated by and wholly internal to [the Justice Department]." O'Keefe Decl. ¶ 11.

Exemption 5 "incorporates the privileges available to Government agencies in civil litigation," to "include[] the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, ___ (2021) (citation omitted); *see Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996). Here, defendant invokes the attorney work product and deliberative process privileges.

#### a. Attorney Work Product Privilege

The attorney work product privilege "protects written materials lawyers prepare 'in anticipation of litigation,'" *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting FED. R. CIV. P. 26(b)(3)), to include "factual materials prepared in anticipation of litigation," "opinions, legal theories, and the like." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). Thus, it affords "a working attorney . . . a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980).

Defendant's declarant describes the responsive records as follows:

> The letter discusses the extradition of [p]laintiff from Mexico as it relates to the United States government's then-ongoing criminal prosecution, the charged criminal offenses against [p]laintiff, and information related to the expected sentencing of [p]laintiff. Additionally, the letter analyzes how the pertinent provisions of the Extradition Treaty between the United States of America and the United Mexican States of May 4, 1978 . . . apply to the then-ongoing criminal prosecution and outlines obligations imposed upon the [USAO/SDTX] to comply with the extradition process. The letter also evaluates the merits of the extradition issue and provides guidance from OIA to the United States Attorney's Office regarding extradition protocols in furtherance of the then-ongoing criminal prosecution. This guidance incorporates by reference the Spanish-language Mexican law enforcement document, attached to the letter, notifying the United States Attorney's Office of the legal standing for extradition, as well as conditions imposed in the extradition case pertinent to [p]laintiff's then-ongoing criminal prosecution prior to sentencing, and confirming the Mexican government's concurrence with the United States' extradition request.

O'Keefe Decl. ¶ 13. According to the declarant, disclosure of the responsive records "would reveal [an] attorney's thought process regarding the steps that DOJ attorneys take to properly adhere to the legal requirements to extradite an individual during an ongoing criminal prosecution, as well as their trial strategy and rationale for seeking extradition." *Id.* ¶ 14. Disclosure also "would divulge legal guidance provided by OIA to the United States Attorney's Office regarding extradition, as well as OIA's assessment of the legal strategies pertaining to compliance with the Extradition Treaty and in furtherance of an ongoing criminal prosecution." *Id.*

"Exemption 5 incorporates the work-product doctrine and protects against the disclosure of attorney work." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005). Defendant here demonstrates that the responsive records were prepared in anticipation of and in connection with then-ongoing criminal proceedings against plaintiff and, therefore, are protected attorney work product. *See Conservation Force v. Jewell*, No. 15-5131, 2015 WL 9309920, at *1 (D.C. Cir. Dec. 4, 2015) (per curiam) (affirming redaction of documents created pursuant to then-pending litigation relating to agency decisions to issue permits); *Martin v. Dep't of Justice*, 488

7

F.3d 446, 455 (D.C. Cir. 2007) (concluding that a memorandum "was protected attorney work-product based on uncontroverted evidence that it was prepared by an FDIC investigator at the direction of an FDIC attorney in anticipation of litigation" and "contain[ed] extensive legal analyses of potential claims available to the FDIC concerning fraudulent loans"); *see also SafeCard Servs.*, 926 F.2d at 1202 (noting that "[t]he existence of an active investigation . . . therefore, is strong circumstantial evidence that the agency lawyer prepared the document with future "litigation in mind").

### b. Deliberative Process Privilege

"[T]he deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. at ___ (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted)). Such "materials [must be] both predecisional and deliberative." *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). A document is predecisional if "generated before the adoption of an agency policy," *Coastal States Gas*, 617 F.2d at 866, and deliberative if it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

The declarant explains that the same letter and attachment "reflect[] the exchange of ideas, guidance, and recommendations among DOJ attorneys leading . . . to a final outcome in an ongoing criminal prosecution." O'Keefe Decl. ¶ 17. The letter not only confirms Mexico's approval of the extradition request, but also "discusses recommendations" for "complying with extradition protocols prior to the conclusion of the criminal prosecution, including sentencing." *Id.* Further,

the declarant explains, the 82-page attachment "outlines the legal standing for extradition for the charged offenses against [p]laintiff and the United States Attorneys' Office's obligations in extradition cases, to better assist the Office with further decision-making regarding [p]laintiff's ongoing criminal prosecution and expected sentencing." *Id*. If these documents were disclosed, the declarant asserts that "the efficient daily workings of DOJ personnel" would be hampered, as they "would no longer feel free to discuss their ideas, strategies, and advice in internal [DOJ] letters." *Id*. ¶ 18. As a result, the declarant states, "DOJ employees would be much more circumspect in their discussions with each other," and their "lack of candor would impair [DOJ's] ability to foster the forthright internal discussions necessary for efficient and proper decision-making." *Id.* Based on defendant's undisputed representations, the Court concludes that the responsive records are predecisional and deliberative and thus are protected under Exemption 5.

### 2. Exemption 6

"[T]he letter contains the names and other identifying information of an OIA attorney, an OIA paralegal specialist, contact information for DOJ employees, including official duty stations (office locations) and office telephone numbers, as well as signatures of government personnel." O'Keefe Decl. ¶ 9; *see id.* ¶ 23 n.3. Defendant relies on Exemption 6 in conjunction with Exemption 7(C) in withholding this information. *Id.* ¶ 24. Because the all the records were compiled for law enforcement purposes, the Court considers only whether Exemption 7(C) applies without examining whether Exemption 6 applies to the same information. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("If the information withheld here was "compiled for law enforcement purposes," thus implicating Exemption 7(C), then we would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."); *District of*

*Columbia v. U.S. Immigration & Customs Enf't*, No. 18-CV-2410, 2020 WL 2527207, at *2 (D.D.C. May 18, 2020) (where "the parties agree the information was compiled for law enforcement purposes . . . the court need only analyze whether ICE properly invoked Exemption 7(C) to withhold the arrestees' names").

### 3. Exemption 7

#### a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure of such records would cause an enumerated harm.  *See FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  Because these records "contain law enforcement information pertaining to [p]laintiff's then-ongoing criminal prosecution," O'Keefe Decl. ¶ 29, and include "information regarding criminal prosecutorial decisions and extradition," *id.* ¶ 22, the Court finds that they were compiled for law enforcement purposes and fall within the scope of Exemption 7.

#### b. Names, Contact Information, and Signatures of Third Parties

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In determining whether this exemption applies to particular information, the Court must balance the privacy interest of individuals mentioned in the records against the public interest in disclosure.  *See Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 6 (D.C.

Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing an individual's privacy interest against a public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).

Defendant withholds names, signatures, and contact information for DOJ personnel under Exemption 7(C). *See* O'Keefe Decl. ¶ 24. Its declarant explains that that the privacy interests of these third parties are substantial, and considering their involvement in "sensitive law enforcement work," the release of information about them "could subject them to harassment and unwanted publicity." *Id.* ¶ 25. Further, she states, release "may limit their effectiveness in handling their respective prosecution or investigation functions and duties, including administrative support to which they are assigned." *Id.* Defendant does not identify, and plaintiff has failed to demonstrate, the existence of "any countervailing public interest in disclosure." *Id.* ¶ 26. In these circumstances, the Court concurs with the declarant's assessment, *see id.*, that the third parties' privacy interests outweigh any public interest in disclosure.

### c. Mexican Government Sources

Exemption 7(D) states that agencies may withhold:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, *or foreign agency or authority* or any private institution which furnished information on a confidential basis, and, in the case of a

11

>record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source[.]

5 U.S.C. § 552(b)(7)(D) (emphasis added). The agency invoking this exemption must show "that the source is a confidential one." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1101 (D.C. Cir. 2014) (citing *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)). It either must demonstrate "that the source did in fact receive an express grant of confidentiality," *id.* (quoting *Campbell*, 164 F.3d at 34), or must "point to more narrowly defined circumstances that . . . support the inference of confidentiality." *Id.* (quoting *Roth*, 642 F.3d at 1184). The key question "is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 172.

Here, defendant invokes Exemption 7(D) to protect "foreign government sources, as well as the information supplied by these sources to United States law enforcement, by not disclosing their assistance, identities, or their information." O'Keefe Decl. ¶ 32. The declarant explains that Mexican authorities provided the type of information "understood to be a confidential communication exchanged between two governments in the course of a criminal prosecution," and the defendant deems "it . . . reasonable to infer that this communication would remain confidential and would not be disclosed to the public." *Id.* ¶ 33. The declarant states:

>[T]he Mexican government explained its analysis of the United States prosecution against [p]laintiff and confirmed the United States' extradition request. Additionally, the Mexican government described Mexico's process for handling extradition requests and making determinations thereon, including precedents and legal standing for extradition, and how these procedures were followed in relation to the request to extradite [p]laintiff in compliance with the Extradition Treaty. The Mexican government provided information that is singular in nature about the matters set forth in the criminal prosecution and sentencing of [p]laintiff. Moreover, this

12

>information was furnished with the understanding that the Criminal Division would not disclose the communication except to the extent necessary for law enforcement purposes.

*Id.* ¶ 34. If this information were disclosed, the declarant explains, there would be "an adverse effect on the Criminal Division's relationships with other cooperative foreign government agencies, which could also harm global law enforcement processes in which the Criminal Division engages." *Id.* ¶ 35.

A foreign government entity may be a "confidential source" for purposes of Exemption 7(D), *see Halpern v. FBI*, 181 F.3d 279, 299 (2d Cir. 1999), and the information it provides may be protected. *See Baez v. U.S. Dep't of Justice*, 647 F.2d 1328, 1340 (D.C. Cir. 1980) (affirming redaction of "the identities of state, local, and foreign entities that have provided confidential information to the FBI"); *cf. Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 585 n.5 (D.C. Cir. 2000) (concluding that agency declarations "adequately document the giving of express assurances of confidentiality to the relevant foreign agencies").

Defendant adequately demonstrates that a Mexican government source provided information to the Criminal Division about plaintiff's extradition, and that it is reasonable to infer that the source did so under an implied assurance of confidentiality, with an eye toward "protect[ing] the integrity of the criminal investigatory process, as well as the safety of law enforcement officers engaged in the pursuit, capture, and lawful return of fugitives to the United States." O'Keefe Decl. ¶ 35.

### D. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022,

1027 (D.C. Cir. 1999).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Defendant's declarant avers that, having "carefully reviewed the records responsive to [plaintiff's] FOIA request . . . there is no non-exempt information . . . that could be segregated for release."  O'Keefe Decl. ¶ 37; *see id.* ¶ 19.  The Court concurs.

### III. CONCLUSION

Defendant demonstrates compliance with its obligations under FOIA by having conducted a reasonable search for records responsive to plaintiff's FOIA request and by justifying its decision to withhold all the records under Exemption 5, 7(C), and 7(D).  Accordingly, the Court GRANTS its motion for summary judgment.  An Order is issued separately.

DATE: May 4, 2021                         /s/
                                          AMY BERMAN JACKSON
                                          United States District Judge